UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                         :

ZAUR MAMEDOV (A076891573) and             :        20-CV-1063 (ARR) (RML)
BAKHRIYA AGAYEVA,                       :
                                           :

                   *Plaintiffs*,         :        **OPINION & ORDER**
                                           :

    -against-                            :
                                           :

MERRICK GARLAND, Attorney General;        :
UR M. JADDOU, Director, United States        :
Citizenship & Immigration Services; and       X
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES

                   *Defendants*.

-------------------------------------------------------------------

ROSS, United States District Judge:

      This case concerns the denial of a Form I-130 Petition for Alien Relative ("I-130 Petition"

or "petition") filed by plaintiff Bakhriya Agayeva on behalf of plaintiff Zaur Mamedov. After

United States Citizenship and Immigration Services ("USCIS") denied Ms. Agayeva's petition

and the Board of Immigration Appeals ("BIA") affirmed the denial, plaintiffs filed suit in this court

seeking review of the BIA's decision under the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 701, *et seq*. Both parties have filed motions for summary judgment. For the reasons set forth

below, plaintiffs' motion for summary judgment is denied and defendants' motion for summary

judgment is granted.

## BACKGROUND[1]

Mr. Mamedov is a native and citizen of Azerbaijan. Certified Record of Proceedings ("R.") 277, 282, ECF Nos. 18–23. On April 25, 2003, he married Karen Joyce, a U.S. citizen. R. 624. In July of that year, Ms. Joyce filed an I-130 Petition on Mr. Mamedov's behalf, requesting that he be classified as her immediate relative. R. 672–73; *see also* 8 U.S.C. § 1154(a) (outlining the procedure for petitioning for immediate relative status).[2] USCIS denied this petition because Ms. Joyce did not provide "convincing evidentiary proof" that Mr. Mamedov had dissolved two prior marriages. R. 654–56.

Ms. Joyce filed another I-130 Petition on behalf of Mr. Mamedov on June 21, 2006. R. 624–26. In December 2006, Ms. Joyce was interviewed by a USCIS officer and provided a sworn statement under penalty of perjury. R. 614–15. Ms. Joyce attested that she and Mr. Mamedov were "just friends" and had never "lived together as husband and wife" or consummated their marriage; that she married Mr. Mamedov in order "to help him get his green card and become a U.S. citizen"; and that Mr. Mamedov offered her $5,000 to marry him, which he would pay her "when everything

---

[1] My opinion is based on the parties' memoranda and on the Certified Record of Proceedings filed with this court on June 18, 2021. *See* Certified Record of Proceedings ("R."), ECF Nos. 18–23. I rely on this record not for the truth of the matters asserted therein, but rather to establish the fact of the agency proceedings and the information before the BIA. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Dossous v. NYC Health & Hosps.*, No. 19-CV-3098 (MKB), 2020 WL 5752175, at *5 (E.D.N.Y. Sept. 25, 2020) ("A court may take judicial notice of administrative records to establish the fact of the proceedings and the outcome but not for the truth of the matters within them.").

[2] Once classified as an "immediate relative" of a U.S. citizen, a noncitizen can apply for lawful permanent residence. *Joseph F. Risoli P.E., LLC v. Johnson*, 274 F. Supp. 3d 88, 89 n.1 (D. Conn. 2017). "Receiving immediate relative classification pursuant to an I-130 Petition is advantageous because the visas for individuals classified as immediate relatives 'are not subject to the worldwide levels or numerical limitations' on immigration prescribed by statute." *Simko v. BIA*, 156 F. Supp. 3d 300, 309 (D. Conn. 2015) (quoting 8 U.S.C. § 1151(b)).

was approved." *Id.* USCIS denied Ms. Joyce's second I-130 Petition the same day as her interview, determining that she had not met her burden to demonstrate that the marriage was bona fide—in other words, that it was not formed "for the purpose of evading the immigration laws," 8 U.S.C. § 1154(c))—and thus had failed to establish that she was eligible for the benefits she sought. R. 609–13. Ms. Joyce and Mr. Mamedov divorced a month later, on January 24, 2007. R. 595.

On February 9, 2007, Mr. Mamedov married Ms. Agayeva, a U.S. citizen. R. 601. In April 2007, Ms. Agayeva filed an I-130 Petition in which she sought to classify Mr. Mamedov as her immediate relative. R. 577–78. USCIS denied Ms. Agayeva's petition on September 9, 2010, on the basis that she "failed to submit convincing evidence" that Mr. Mamedov's prior marriage to Ms. Joyce "was bona fide at it[s] inception[]." R. 314–16. Though USCIS did not question the authenticity of Mr. Mamedov's marriage to Ms. Agayeva, its determination that his marriage to Joyce was a "sham marriage" prevented it from granting Ms. Agayeva's petition. *Id.*; *see also* 8 U.S.C. § 1154(c). Ms. Agayeva initially appealed USCIS's determination to the BIA but later withdrew that appeal. R. 288–92.

On January 11, 2011, Ms. Agayeva filed a second I-130 Petition on behalf of Mr. Mamedov, which is the subject of the present case. R. 271–72. In support of this petition, Ms. Agayeva submitted materials through which she sought to establish that Mr. Mamedov's previous marriage to Ms. Joyce was bona fide, including: (1) a notarized affidavit from Ms. Joyce, in which she explained that her marriage to Mr. Mamedov was "real," that he never paid her to help with his immigration status, and that she lied in her 2006 USCIS interview because she was angry with Mr. Mamedov at the time and "scared" of the officer interviewing her, who said she "would be prosecuted if [she] went any further with the interview"; (2) joint tax filings by Mr. Mamedov and Ms. Joyce; (3) joint bank statements for Mr. Mamedov and Ms. Joyce; (4) a Florida Division of

Corporations record establishing that Mr. Mamedov and Ms. Joyce jointly owned a company; and (5) notarized affidavits from Mr. Mamedov and Ms. Joyce's mutual friends Matthew Paul and Rene Alvarez, both of whom attested to the validity of the marriage. R. 67–68; 157.[3]

On May 14, 2013, USCIS sent Ms. Agayeva a Notice of Intent to Deny her petition ("NOID"). R. 156–57. The NOID summarized Ms. Joyce's 2008 affidavit stating that she did not have a bona fide marital relationship with Mr. Mamedov and the materials Ms. Agayeva submitted to establish the contrary. R. 157. It determined that the latter materials did "not outweigh Ms. Joyce's [earlier] sworn statement" and gave Ms. Agayeva thirty days to present additional evidence in support of her petition. *Id.* In response, Ms. Agayeva resubmitted the same set of documents, urging USCIS to afford them more weight and reconsider its conclusion. R. 126–55.

USCIS denied Ms. Agayeva's petition on October 3, 2013, on the basis that Mr. Mamedov's previous marriage to Ms. Joyce was not bona fide. R. 123–25. In support of its decision, USCIS noted that it had denied Ms. Joyce's first I-130 petition and that, in December 2006, Ms. Joyce stated under oath that she married Mr. Mamedov "for the purpose of helping him to receive an immigration benefit" and was offered $5,000 to do so. R. 124. USCIS also summarized the evidence Ms. Agayeva submitted in support of her claim that Mr. Mamedov's marriage to Ms. Joyce was bona fide, including "joint taxes, joint bank statements, joint business Occupational License Application Form for Mercedes Limousine Services, letters from friends which stated that they knew Ms. Joyce and Mr. Mamedov as a married couple, and a signed affidavit by Ms. Joyce that stated that her marriage to Mr. Mamedov was a bona fide relationship." *Id.* USCIS explained that it "reviewed [this] evidence for merit and credibility" and ultimately

---

[3] Despite Mr. Mamedov and Ms. Agayeva's arguments to the contrary, *see* Reply in Resp. to Mot. 7, ECF No. 31, the record makes clear that Ms. Agayeva submitted only two affidavits from friends in support of the I-130 Petition at issue here. R. 67–68; *see also id.* 126–28, 33–34.

concluded that it did not "overcome the sworn statement provided by Ms. Joyce on December 18, 2006." *Id.* Accordingly, it denied Ms. Agayeva's petition. *Id.*

Ms. Agayeva appealed the decision to the BIA. R. 116–18. On May 15, 2015, the BIA affirmed USCIS's decision. R. 4–5. Reviewing the case de novo, the BIA determined that "substantial and probative evidence" supported USCIS's conclusion that Mr. Mamedov's marriage to Ms. Joyce was not bona fide. R. 5. Specifically, the BIA considered Ms. Joyce's December 2006 statement and found it to be "particularly persuasive in that she explicitly admit[ted] that the marriage was for immigration purposes, that she identified the amount of money [Mr. Mamedov] offered and when, and when she expected to receive the money, that the couple never lived together, and that [the] marriage was never consummated." R. 4. The BIA also disagreed with Ms. Agayeva's contention that USCIS "gave undue weight" to this statement without "fully considering" Ms. Joyce's later recantation and the additional evidence that the marriage was bona fide. R. 4–5. In the BIA's view, Ms. Agayeva had "not submitted sufficient evidence to establish that the [2006 statement] [was] factually untrue." R. 5. It explained: "We do not find the subsequent statement by Ms. Joyce signed 6 years after the initial statement, nor the tax returns, joint business license, or two letters from friends of [Mr. Mamedov] to be sufficiently persuasive to overcome Ms. Joyce's detailed statement made contemporaneous to the interview on her [I-130 Petition]." *Id.* The BIA therefore dismissed Ms. Agayeva's appeal. *Id.*

On February 26, 2020, Mr. Mamedov and Ms. Agayeva filed suit in this court. *See* Compl., ECF No. 1.[4] Their Complaint alleged that the BIA's dismissal of Ms. Agayeva's appeal was

---

[4] The complaint names USCIS, then-Attorney General William Barr, and then-Director of USCIS Mark Koumans as defendants. Pursuant to Federal Rule of Civil Procedure 25, I substitute Attorney General Merrick Garland and Director of USCIS Ur M. Jaddou, respectively, for Messrs. Barr and Koumans.

arbitrary and capricious, in violation of the APA; that the BIA violated Mr. Mamedov's due process rights under the Fifth Amendment in its consideration of Ms. Agayeva's petition; and that 8 U.S.C. § 1154, which establishes the procedure for immediate relative classification, violates the Fifth and Eighth Amendments. *Id.* ¶¶ 11–18. On March 1, 2021, I denied defendants' motion to dismiss the APA claim but dismissed plaintiffs' due process claim without prejudice. *See Mamedov v. Barr* (*Mamedov I*), No. 20-CV-1063 (ARR), 2021 WL 781743, at *5 (E.D.N.Y. Mar. 1, 2021).[5] The case proceeded to discovery, and the parties have now filed motions for summary judgment on the remaining claims. *See* Mot. for Summ. J., ECF No. 29; Cross Mot. for Summ. J., ECF No. 30.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the parties seek APA review of an agency action and do not dispute the contents of the administrative record, the "'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Akinsuyi v. BIA*, No. 17-CV-11462 (PKC), 2018 WL 4017579, at *4 (E.D.N.Y. Aug. 22, 2018) (same). Thus, my inquiry is focused "not on the existence or nonexistence of disputed issues of material fact," but rather "on the legality of the agency decisions." *Simko v. BIA*, 156 F. Supp. 3d 300, 307 (D. Conn. 2015); *see also Martucci v. Hartford Life Ins. Co.*, 863 F. Supp. 269, 274 (S.D.N.Y. 2012) ("The parties do not dispute the contents of the administrative record, so there is no genuinely disputed issue of material fact at hand. The only dispute concerns whether [the agency decision], based on the undisputed administrated record,

---

[5] Plaintiffs withdrew their Eighth Amendment claim, and I determined that their facial challenge to 8 U.S.C. § 1154 was abandoned. *Mamedov I*, 2021 WL 781743, at *5 n.5.

was wrong.").

In actions brought under the APA, "a reviewing court must hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). If an agency "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," its decision must be set aside. *Karpova*, 497 F.3d at 268 (quoting *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43). But "so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Id.*

## DISCUSSION

### I.   The BIA's Denial of Ms. Agayeva's I-130 Petition Was Not Arbitrary, Capricious, or an Abuse of Discretion.

In affirming USCIS's denial of Ms. Agayeva's I-130 Petition, the BIA explained that its decision was based on 8 U.S.C. § 1154(c). This provision of the Immigration and Nationality Act ("INA"), also known as the marriage fraud bar, specifies:

> [N]o [I-130 Petition] shall be approved if (1) the [noncitizen] has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of [a noncitizen] lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the

immigration laws, or (2) the Attorney General has determined that the [noncitizen] has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c); *see also Bourisquot v. Holder*, 569 F. App'x 35, 36 (2d Cir. 2014). "The finding of fraudulent marriage must be supported by 'substantial and probative' evidence 'documented in the [noncitizen's] file.'" *Joseph F. Risoli, P.E., LLC v. Nielsen*, 734 F. App'x 61, 62 (2d Cir. 2018) (quoting *Matter of Tawfik*, 20 I & N. Dec. 166, 167 (B.I.A. 1990)). This means that "the evidence must establish that it is more than probably true that [a] marriage is fraudulent"—a standard "higher than a preponderance of the evidence and closer to clear and convincing evidence." *Matter of P. Singh*, 27 I. & N. Dec. 598, 607 (B.I.A. 2019). If the agency determines that substantial and probative evidence of fraud exists, then 'the burden shifts to the petitioner to establish that the beneficiary did not seek [immediate relative] status based on a prior fraudulent marriage.'" *Joseph F. Risoli, P.E., LLC v. Nielsen*, 274 F. Supp. 3d 88, 91 (D. Conn. 2017) (quoting *Matter of Kahy*, 19 I. & N. Dec. 803, 806–07 (B.I.A. 1988)), *aff'd*, 734 F. App'x 61.

Upon review of the administrative record, I find that the BIA's determination that Mr. Mamedov's marriage to Ms. Joyce was fraudulent was not arbitrary, capricious, or an abuse of discretion. The BIA based its decision on Ms. Joyce's 2006 statement, made under penalty of perjury, that her marriage to Mr. Mamedov was in order "to help him get his green card and become a U.S. citizen," that they never lived as husband and wife, and that he promised to pay her $5,000 "when everything was approved." R. 4–5, 615. This unequivocal statement, by one of the two parties to the allegedly fraudulent union, is "the most direct evidence" that the marriage was not bona fide and provides strong support for the BIA's position. *Singh*, 27 I. & N. Dec. at 610; *cf. Simko*, 156 F. Supp. at 311–12 (finding the BIA's denial of an I-130 Petition arbitrary and

capricious where "the agency cited no direct evidence" that the marriage in question was not bona fide); *Risoli*, 274 F. Supp. 3d at 92 (indicating that statements by a spouse "who admits complicity" in marriage fraud may be taken at face value). The BIA thus did not err in its conclusion that the record contains "substantial and probative evidence" that Mr. Mamedov's marriage to Ms. Joyce was "entered into for the purpose of evading the immigration laws."

Opposing the BIA's determination, plaintiffs argue that the BIA ignored or undervalued Ms. Joyce's 2012 recantation of her earlier statement and the other evidence Ms. Agayeva submitted to prove the marriage was bona fide, including joint tax returns and bank statements, a joint business license, and the affidavits of two friends of Ms. Joyce and Mr. Mamedov. But the BIA's opinion makes clear that it did consider all of this evidence and, having done so, concluded that it "did not overcome the previous statement admitting fraud." R. 5. Specifically, the BIA commented that it found Ms. Joyce's "detailed" statement "particularly persuasive in that she explicitly admit[ted] that the marriage was for immigration purposes, that she identified the amount of money [Mr. Mamedov] offered and when, and when she expected to receive the money, that the couple never lived together, and that [the] marriage was never consummated." R. 4. While Mr. Mamedov and Ms. Agayeva may disagree with the way the BIA assessed the conflicting materials before it, I cannot conclude that the BIA abused its discretion in weighing the evidence as it did and determining that Ms. Agayeva had not met her burden. *See Singh v. BIA*, 724 F. App'x 36, 39 (2d Cir. 2018) ("[T]he [A]gency has significant discretion over the weight to be afforded to the evidence before it, and the probative value it assigned does not rise to the level of an abuse of discretion, particularly in light of the deference we afford in the context of marriage fraud."); *cf. Akinsuyi*, 2018 WL 4017579, at *6 (upholding the BIA's decision where "[t]he Agency fully considered and reasonably weighed [the plaintiff's] favorable evidence against other evidence in

the record in reaching its determination"); *Koffi v. Holder*, 09-CV-2102 (VLB), 2011 WL 2896049, at *8 (D. Conn. July 18, 2011) (concluding that the BIA did not abuse its discretion where it "took into consideration" all the evidence submitted, "assessed the credibility of and weighed such evidence[,] and ultimately concluded that the evidence demonstrating the fraudulent nature of [the plaintiff's] first marriage outweighed the evidence to the contrary").

 Plaintiffs' citation to *Noriega v. Gonzales*, No. 06-CV-1073 (PGS), 2009 WL 2424698 (D.N.J. Aug. 6, 2009), does not alter my conclusion. In *Noriega*, as in the present case, the BIA denied an I-130 Petition filed by the noncitizen plaintiff's wife on the basis that the plaintiff's marriage to his ex-wife was not bona fide. *Id.* at *1–2. Before the BIA was a statement by the ex-wife that she had entered the marriage "to evade immigration laws," but also a later recantation of that statement by the ex-wife and "tax returns, photographs, and bills encompassing hundreds of pages proving that [the plaintiff's] relationship with [his ex-wife] had been legitimate." *Id.* at *2, 4. The plaintiff filed suit under the APA and the district court granted summary judgment in his favor, finding that the BIA's determination was not based on substantial evidence. *Id.* at *2–5. But there, the district court explained that the "failing of the [BIA] was to disregard without any analysis" the evidence the plaintiff submitted establishing that his previous marriage was bona fide. *Id.* at *4.[6] Here, the record makes clear that the BIA did analyze all the evidence before it and did not ignore or unfairly disregard Ms. Agayeva's submissions. That the BIA did not weigh this evidence in the way the plaintiffs believe it should have is not grounds for me to overturn its findings. *Cf. Singh v. BIA*, No. 15-CV-5541 (PKC), 2017 WL 727541, at *8 (S.D.N.Y. Feb. 23,

---

[6] Specifically, the BIA disregarded the ex-wife's recantation solely "because it did not contain [her] contact information" and disregarded the other documentary evidence because such evidence "can be fabricated." *Noriega*, 2009 WL 2424698, at *2, 4. Based on this record, the district court concluded that the BIA "did not fairly consider" the record before it. *Id.* at *5 (quoting *Sotto v. U.S. I.N.S.*, 748 F.2d 832, 837 (3d Cir. 1984) (quotation marks omitted).

2017), (declining to find the BIA's decision arbitrary and capricious where the plaintiff's argument was that the BIA "should have credited certain statements" he submitted establishing the bona fides of his previous marriage and should have rejected evidence to the contrary), *aff'd*, 724 F. App'x 36.

Because the BIA's denial of Ms. Agayeva's I-130 Petition was supported by substantial evidence and was not arbitrary or capricious, I deny plaintiffs' motion for summary judgment and grant defendants' cross motion for the same.

## II. I Grant Plaintiffs' Request to File an Amended Complaint Reasserting Their Due Process Claim.

In addition to their APA-related arguments, Mr. Mamedov and Ms. Agayeva's summary judgment briefing seems to reassert their claim, which I previously dismissed without prejudice, that the BIA's denial of Ms. Agayeva's I-130 Petition violated plaintiffs' due process rights. *See* Mot. for Summ. J. 10–12. Plaintiffs urge me to "exercis[e] sua sponte authority to deem the procedural due process claim to be repleaded." Reply in Resp. to Mot. ("Reply") 8–9, ECF No. 31. In the alternative, they seek leave to file an amended complaint in which they assert this claim. *Id.* at 9. I decline the former request, as "parties may not amend complaints by way of summary judgment briefing." *Gillman v. Inner City Broad. Corp.*, No. 08-CV-8909 (LAP), 2011 WL 181732, at *1 n.1 (S.D.N.Y. Jan. 18, 2011); *see also 49 WB LLC v. Vill. of Haverstraw*, No. 08-CV-5784 (VB), 2012 WL 336152, at *12 (S.D.N.Y. Feb. 2, 2012) (same). However, I grant Mr. Mamedov and Ms. Agayeva permission to file an amended complaint asserting their due process claim against defendants.[7] Plaintiffs are directed to file this amended complaint no later than February 18, 2022.

---

[7] My expectation is that the amended complaint will assert only the previously dismissed due process claim, *see* Compl. ¶¶ 15–16.

## CONCLUSION

In light of the foregoing discussion, I grant defendants' motion for summary judgment on plaintiffs' APA claim, deny plaintiffs' motion for summary judgment on the same claim, and grant plaintiffs leave to file an amended complaint raising their previously dismissed due process claim.

SO ORDERED.

                                                    _____/s/_____
                                                    Allyne R. Ross
                                                    United States District Judge

Dated:          February 11, 2022
                Brooklyn, New York