UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
ZAUR MAMEDOV (A076891573) and :
BAKHRIYA AGAYEVA, :
:
*Plaintiffs*, :
:
  -against- : 20-CV-1063 (ARR) (RML)
:
MERRICK GARLAND, Attorney General; : **OPINION & ORDER**
UR M. JADDOU, Director, United States :
Citizenship & Immigration Services; and :
UNITED STATES CITIZENSHIP AND :
IMMIGRATION SERVICES :
:
*Defendants*. :
:
------------------------------------------------------------------- X

ROSS, United States District Judge:

      In this case concerning the denial of a Form I-130 Petition for Alien Relative ("I-130 petition" or "petition"), defendants Merrick Garland, Ur M. Jaddou, and United States Citizenship and Immigration Services ("defendants" or "the government") move to dismiss the second amended complaint ("SAC" or "complaint") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In their complaint, plaintiffs Zaur Mamedov and Bakhriya Agayeva principally allege that the procedure used to deny an I-130 petition filed by Ms. Agayeva on Mr. Mamedov's behalf violated their due process rights and the consent decree in *Stokes v. INS*, No. 74-CV-1022 (CLB) (S.D.N.Y. Nov. 10, 1976). The government argues that the SAC must be dismissed because plaintiffs do not have a protected interest in the grant of the petition and the petition was denied consistent with due process and the *Stokes* decree. For the following reasons, I assume that plaintiffs have a protected interest in the grant of the I-130 petition and hold that they

have failed to allege a violation of any protected due process right. I therefore grant the government's motion to dismiss.

## BACKGROUND

*Legal Background*

When a United States citizen marries a noncitizen, the citizen may petition for lawful permanent residency for her noncitizen spouse. 8 U.S.C. §§ 1151, 1154. The process begins with the filing of an I-130 petition. 8 C.F.R. § 204.1(a)(1). The I-130 petition is a request that U.S. Citizenship and Immigration Services ("USCIS") classify the beneficiary as an "immediate relative" under the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1154(a)(1). Though approval of an I-130 petition "does not automatically cause the agency to issue a visa or grant permanent lawful resident status to the beneficiary," *Li v. Renaud*, 654 F.3d 376, 378 (2d Cir. 2011), immediate relative status is valuable. An "immediate relative" spouse of a U.S. citizen can apply for lawful permanent residence and is "not subject to the worldwide levels or numerical limitations" for immigrant visas or permanent residence. 8 U.S.C. § 1151(b).

The INA mandates the following procedures for consideration and approval of an I-130 petition: "After an investigation of the facts in each case, . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative[,] . . . approve the petition . . . ." 8 U.S.C. § 1154(b).[1] The next subsection precludes approval of a petition upon a finding of past marriage fraud:

---

[1] The Attorney General's role in the statutory scheme has since been delegated to the Secretary of the Department of Homeland Security. *See* 6 U.S.C. § 202(4).

2

> Notwithstanding the provisions of subsection (b) no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).

The New York District Office of USCIS adjudicates I-130 spouse visa petitions pursuant to the procedures established by the consent decree entered as a final judgment in *Stokes v. INS*, No. 74-CV-1022 (CLB) (S.D.N.Y. Nov. 10, 1976). *See* SAC, Ex. A ("*Stokes* Decree"), ECF No. 37. The *Stokes* decree stipulates that the petitioners have certain rights and privileges during an I-130 adjudicatory proceeding, including, *inter alia*, the right to representation by an attorney or representative; the right to present evidence including live witnesses; the right to cross-examine adverse witnesses and rebut adverse evidence; and the right to obtain subpoenas to compel the attendance of witnesses. *Stokes* Decree 3–4.

### *Factual Background*

I have detailed the facts underlying this case in two prior opinions, familiarity with which is assumed. *See Mamedov v. Barr*, No. 20-CV-1063 (ARR), 2021 WL 781743, at *2 (E.D.N.Y. Mar. 1, 2021) ("*Mamedov I*"); *Mamedov v. Garland*, No. 20-CV-1063 (ARR), 2022 WL 426155, at *1–3 (E.D.N.Y. Feb. 11, 2022) ("*Mamedov II*"). The following facts, which are particularly relevant to the present motion and presumed to be true, *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013), are drawn from the SAC and the certified administrative record, which is incorporated by reference in the complaint, SAC ¶ 8.

3

Zaur Mamedov is a native and citizen of Azerbaijan. Certified Record of Proceedings ("R.") 282, ECF Nos. 18–23.[2] On April 25, 2003, he married Karen Joyce, a U.S. citizen. SAC ¶ 8. Mr. Mamedov and Ms. Joyce filed joint tax returns and jointly applied for a limousine business license. *Id.* On June 21, 2006, Joyce filed an I-130 petition on her husband's behalf, requesting that he be classified as her immediate relative. SAC ¶ 9. At an interview with USCIS officers, Joyce signed a statement claiming, among other things, that their marriage "was not real and that she had been paid $5000 for the marriage." SAC ¶ 10. USCIS denied the I-130 petition the same day and the couple divorced about a month later, on January 24, 2007. *Id.*

On February 9, 2007, Mamedov married Bakhriya Agayeva, a naturalized U.S. citizen. *Id.* ¶¶ 2, 11. The couple knew each other from their native Azerbaijan, where they attended the same school. *Id.* ¶ 11. On April 10, 2007, Ms. Agayeva filed an I-130 petition on Mr. Mamedov's behalf. *Id.* USCIS denied the petition pursuant to § 1154(c); Ms. Agayeva appealed the denial to the Board of Immigration Appeals ("BIA") and then withdrew the appeal. *Id.* ¶¶ 11–12. On January 12, 2011, Ms. Agayeva filed a second I-130 petition for Mr. Mamedov. *Id.* ¶ 13. The second petition, which is the subject of the present case, included as supporting evidence an affidavit executed by Karen Joyce recanting her earlier statement about her marriage with Mr. Mamedov. *Id.* Ms. Joyce's affidavit states that her marriage to Mamedov was "real, not arranged" and not in exchange for payment. Aff. of Karen Joyce ¶ 1, SAC, Ex. B ("Joyce Aff."). The affidavit explains that Joyce and Mamedov had grown apart and were no longer living together at the time of the I-130 interview, and that she suspected he was with another woman. *Id.* ¶ 3. Joyce states she was angry and "wanted to hurt" Mamedov, so "that is why I said the things that I said to the officers." *Id.*

---

[2] The Certified Record of Proceedings, which was filed under seal pursuant to Magistrate Judge Levy's June 14, 2021 order, is hereby unsealed to the extent this opinion describes information contained in the record.

4

Addressing the signed statement, Joyce explains that "[t]he immigration officer scared me, saying that I would be prosecuted if I went any further with the interview, so I signed whatever they gave me to sign." *Id.* Plaintiffs also submitted Mamedov and Joyce's joint tax filings, joint bank statements, a joint application for a business license, and several affidavits from friends to support the bona fides of Mamedov and Joyce's marriage. SAC ¶ 13.

On August 12, 2012, USCIS interviewed Ms. Agayeva and Mr. Mamedov regarding the second I-130 petition. At the hearing, plaintiffs' attorney brought up the Joyce marriage and urged the officer to read the Joyce affidavit. *Id.* ¶ 14. Counsel later followed up with the USCIS officer, sending a copy of the Joyce affidavit and other evidence supporting the bona fides of the marriage. *Id.* After USCIS issued a notice of intent to deny the petition—again pursuant to § 1154(c)—plaintiffs' attorney sent two letters to the USCIS New York Field Office Director requesting that the Field Office Director allow Joyce to testify before her by telephone or video. *Id.* On October 3, 2012, USCIS denied the second I-130 petition, having determined that "the submitted evidence does not overcome the sworn statement provided by Ms. Joyce on December 18, 2006." R. 124. Plaintiffs appealed, and the BIA affirmed. SAC ¶ 16.

### *Procedural History*

On February 26, 2020, plaintiffs filed the present suit. *See* Compl., ECF No. 1. Their first complaint alleged violations of the APA, the Fifth Amendment, and the Eighth Amendment. I dismissed plaintiffs' Fifth Amendment due process claim without prejudice and denied defendants' motion to dismiss the APA claim, and plaintiffs withdrew their Eighth Amendment claim. *Mamedov I*, 2021 WL 781743, at *5 & n.5. After both parties moved for summary judgment, I granted summary judgment in defendants' favor. *Mamedov II*, 2022 WL 426155, at *1. I also

granted plaintiffs' request to file an amended complaint reasserting their due process claims. *Id.* at *5.

On March 18, 2022, plaintiffs reasserted their Fifth Amendment due process claims by filing the second amended complaint. The SAC alleges defendants violated plaintiffs' procedural due process rights in three ways: (1) by denying the I-130 petition on the basis of a statement "illegally coerced from Karen Joyce" and not disclosing to plaintiffs "the circumstances under which the statement had been coerced" thus "denying them a meaningful opportunity to rebut the statement," SAC ¶ 19; (2) by not affording plaintiffs "a trial type hearing before a neutral adjudicator at which Karen Joyce could testify and have her credibility adjudged," *id.* ¶ 20; and (3) by failing to address in the BIA's opinion plaintiffs' arguments that "a hearing should have been held at which Karen Joyce could testify" and "the circumstances under which the . . . statement was coerced should have been considered," *id.* ¶ 21. In addition, plaintiffs' SAC alleges that the denial of the I-130 petition violated the due process protections embodied in the *Stokes* decree. Specifically, plaintiffs allege that they were denied the opportunity to present witnesses and rebut adverse information. *Id.* ¶ 23. On May 13, 2022, defendants filed the present motion to dismiss plaintiffs' SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On March 27, 2023, I granted the motion. Defendants timely moved for partial reconsideration, which I granted in part. *See* Op. & Order, ECF No. 58. Having vacated the original opinion, I issue this amended opinion in its place.

## LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim, I must construe the complaint "liberally, accepting all factual allegations

in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (citation omitted). I may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). However, where "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 176 n.7 (E.D.N.Y. 2015) (quoting *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Defendants move to dismiss plaintiffs' complaint on two grounds. First, the government argues that plaintiffs do not have a protected interest in the grant of the I-130 petition. If plaintiffs lack a liberty or property interest in the grant of the petition, they cannot claim their procedural due process rights were violated. Second, the government argues that, even if plaintiffs have a protected interest, the process they received in the I-130 adjudication was constitutionally sufficient.

### I. I Assume That Plaintiffs Have a Protected Interest in the Grant of the I-130 Petition.

The Due Process Clause of the Fifth Amendment provides in relevant part that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

The Due Process Clause offers both procedural and substantive protections. Procedural due process, the form of protection relevant to the present case, requires the federal government to follow certain procedures before depriving someone of a liberty or property interest. To bring a successful procedural due process claim, a plaintiff must, at the outset, demonstrate they have a liberty or property interest protected by the Constitution. *Yuen Jin v. Mukasey*, 538 F.3d 143, 156–57 (2d Cir. 2008). The Supreme Court has long held that procedural due process protects individuals' interests in the receipt of certain government benefits. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). However, "[t]o have a property interest in a benefit, a person . . . must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* There is no legitimate claim of entitlement to a benefit "if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Accordingly, noncitizens "have no constitutionally-protected liberty or property interest in . . . a discretionary grant of relief for which they are otherwise statutorily ineligible." *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018) (internal quotation marks omitted). But an entitlement to a government benefit may exist where "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985).

Section 204(b) of the INA provides: "After an investigation of the facts in each case, . . . the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative[,] . . . approve the petition . . . ." 8 U.S.C. § 1154(b) (emphasis added). Though the Second Circuit has not directly addressed the import of this language, at least two other courts have held that the nondiscretionary language

in § 1154(b) creates a protected entitlement. Focusing on the instruction that the government "shall . . . approve" a petition following certain findings of fact, the Ninth Circuit held that "[t]he decision of whether to approve an I-130 visa petition is a nondiscretionary one because determinations that require applications of law to factual determinations are nondiscretionary." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (internal quotation marks omitted). Building on the Ninth Circuit's decision, a New York district court found that the reasoning of *Ching* is consistent with binding Second Circuit precedent. *See Caplash v. Johnson*, 230 F. Supp. 3d 128, 138–39 (W.D.N.Y. 2017). As Judge Wolford explained in a thorough and well-reasoned opinion, the Second and Ninth Circuits have a similar approach to identifying protected government benefits. "Like the Second Circuit, the Ninth Circuit has similarly held that a 'reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms.'" *Id.* at 138 n.9 (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994)). Because "[t]he *Ching* decision relies on Supreme Court precedent and Ninth Circuit precedent that closely tracks Second Circuit precedent," the court held that "a constitutionally protected property interest attaches to 8 U.S.C. § 1154(b), and, by extension, to the adjudication of Plaintiff's Form I-130 petition." *Caplash*, 230 F. Supp 3d at 139.

Perhaps recognizing the direction the wind is blowing on this issue, the government does not explicitly argue that § 1154(b) is discretionary. *See* Gov't Mot. to Dismiss 7–8, ECF No. 41-1; Gov't Reply 2, ECF No. 46. Indeed, when litigating this very issue in *Caplash*, the government "concede[d] in their reply that [the plaintiff] 'does likely have a protected interest in the mere adjudication of his Form I-130.'" *Caplash*, 230 F. Supp. 3d at 139. Instead, the government makes two alternative arguments. First, the government claims that the "immediate relative" classification

9

is not "automatic, but instead requires that the petitioner establish her or his entitlement to such classification." Gov't Mot. 6–7; Gov't Reply 2. Elaborating, the government says that the statutory scheme, read as a whole, indicates that § 1154(c) "takes precedence over § 1154(b) and forecloses any claim of right or entitlement to the approval of an I-130 petition where a prior marriage is found to be fraudulent for § 1154(c) purposes." Gov't Reply 3. In other words, though § 1154(b) may be mandatory, plaintiffs' otherwise legitimate claim of entitlement to its benefits is void because approval is barred under § 1154(c). Second, the government argues that plaintiffs cannot have "a protected interest of any kind" in the grant of an I-130 petition because "there is no fundamental right for a United States citizen to live in the United States with his or her alien spouse." Gov't Mot. 7.

I consider the decisions in *Ching* and *Caplash* persuasive and defendants' arguments unavailing. As the Ninth Circuit explained, "[v]irtually no government benefit is available to individuals without a requirement that certain conditions are met." *Ching*, 725 F.3d at 1156. Thus, the requirement that a government official "determine[] that the facts stated in the petition are true" does not seem to make § 1154(b) discretionary. And § 1154(c), which simply requires an additional factual determination, likewise does not seem to foreclose the protected-interest analysis. In fact, the government's argument about the effect of § 1154(c) appears to put the cart before the horse—it "confuses the question of whether there is a protected interest in a benefit with the question of eligibility for that benefit." *Id.* That section 1154(c) may indeed render Mr. Mamedov ineligible for immediate relative classification does not necessarily eliminate the right to a fair adjudication of his petition *ex ante*.

Defendants' second argument is essentially correct but not dispositive of the procedural due process issue. Though plaintiffs gesture toward "the evolving recognition of the

10

constitutionally protected interest of a citizen spouse in continuing married life in the United States with her foreign born mate," Pls.' Opp'n to Mot. to Dismiss 1, ECF No. 45, the only right squarely at issue in the present case is the conditional entitlement to approval of an I-130 petition for immediate relative status. That there is not in this circuit a recognized substantive due process right for a citizen to live in the United States with her noncitizen spouse, *see Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 227–28 (E.D.N.Y. 2021), *appeal docketed*, No. 21-1265 (2d Cir. May 14, 2021), does not necessarily mean there is no protected interest in the nondiscretionary intermediate step of immediate relative classification.

The rest of the cases cited by the government either note that there is no substantive right to a spousal visa, *see Makransky v. Johnson*, 176 F. Supp. 3d 217, 227 (E.D.N.Y. 2016); *Parella v. Johnson*, No. 15-CV-863 (LEK), 2016 WL 3566861 (N.D.N.Y. June 27, 2016), or properly differentiate between substantive due process and procedural due process claims without reaching the question of whether plaintiffs have a protected interest in the grant of an I-130 petition, *see Almakalani*, 527 F. Supp. 3d at 228. The government does not cite, and I have not found, a case directly holding that a petitioner does not have a protected interest in the grant of an I-130 petition.

That said, I find it prudent to avoid a final determination on the constitutional question presented in this motion. Because in Part II I conclude that plaintiffs have failed to state a claim, I will simply assume without deciding that a noncitizen spouse beneficiary who meets the I-130 requirements is entitled to immediate relative status and therefore to an I-130 adjudication that comports with due process.

## II. Plaintiffs Have Not Pleaded Facts Sufficient to Support a Procedural Due Process Claim.

Having assumed that plaintiffs have a protected property interest in the adjudication of an I-130 petition, I must consider whether the procedures used in adjudicating plaintiffs' petition

11

satisfied due process. Because "due process is flexible and calls for such procedural protections as the particular situation demands," this analysis must be done on a case-by-case basis. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quotation omitted). *Mathews* identifies three factors used to determine whether additional process is due in an administrative proceeding: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

In this case, however, I find it unnecessary to analyze the *Mathews* factors because plaintiffs have failed to allege facts sufficient to support a finding that they were entitled to any due process protections that were not already available to them. Plaintiffs claim they were denied due process in the following ways: (1) the petition was denied based on a statement illegally coerced from Karen Joyce; (2) the circumstances of the coercion were never disclosed to plaintiffs, denying them the opportunity to rebut the adverse information; (3) there was no trial type hearing at which plaintiffs could present Joyce as a witness and have her credibility adjudged by a neutral adjudicator; and (4) the BIA failed to address plaintiffs' arguments about the lack of a hearing and the circumstances of Joyce's coercion. I will address these contentions in turn.

First, plaintiffs allege that defendants violated due process by denying the petition based on Joyce's purportedly coerced 2006 statement. I see two issues with this argument. At the outset, the argument essentially asks that I revisit my prior ruling on plaintiffs' APA claim. In response to plaintiffs' earlier assertion that the BIA gave undue weight to the 2006 statement and "ignored or undervalued" the 2012 affidavit, I determined that the BIA properly considered Joyce's 2012

12

recantation and did not abuse its discretion in weighing the evidence as it did. *Mamedov II*, 2022 WL 426155, at *4. Additionally, the allegation that Joyce was coerced into making her statement is contradicted by Joyce's own affidavit. In her sworn statement, Joyce does not state that she was coerced into admitting to marriage fraud. Rather, she says that she "suspected that Zaur was involved with another woman[] and was angry at him." Joyce Aff. ¶ 3. She continues: "I guess that I wanted to hurt him, and *that is why I said the things that I said to the officers*. The immigration officer scared me, saying that I would be prosecuted if I went any further with the interview, so I signed whatever they gave me to sign." *Id.* (emphasis added). The only indication of undue pressure thus comes after Joyce apparently told the officers about the circumstances of their marriage. As a result, I do not accept as true plaintiffs' allegations that the 2006 statement was coerced.

Second, plaintiffs allege that the circumstances of Joyce's coercion were never disclosed to them, which denied them the opportunity to rebut the adverse information contained in the 2006 statement. Frankly, I find this argument mystifying. Mamedov received a copy of Joyce's 2006 statement when his first I-130 petition was denied in 2006. R. 609–17. And plaintiffs' current counsel has been in contact with Joyce—a percipient witness to the purported coercion—who could have (and apparently did) share with plaintiffs' counsel the circumstances in which she made the 2006 statement. Plaintiffs thus cannot complain that they lacked an opportunity to rebut the 2006 statement, particularly when they in fact *did* attempt to rebut it by providing the 2012 affidavit.

Third, plaintiffs allege that due process in this case required a trial-type hearing at which plaintiffs could present Joyce as a witness and have her credibility adjudged by a neutral adjudicator. This claim fails because plaintiffs have forfeited the argument by failing to timely

13

assert it and by failing to avail themselves of available opportunities to present Joyce's testimony.[3]

First, plaintiffs never specifically requested a "trial type" hearing during the I-130 proceedings. Though the complaint alleges that plaintiffs' counsel "repeatedly requested a hearing at which Karen Joyce could testify and have her credibility determined in such a trial type hearing," SAC ¶ 14, the certified record of proceedings tells a different story. According to the record, plaintiffs' counsel sent two letters to the USCIS Field Office Director. In the first letter, dated August 15, 2013, counsel stated:

> If it were possible to have Ms. JOYCE testify in person, I would do that, but she has relocated from Florida to Colorado, if I correctly remember what she told me in our last telephone conversation. If necessary, I can try to have her speak to you on the telephone, or even by Skype, although I believe that would be extremely difficult to arrange, and you might not be amenable to doing that.

R. 62. In the second letter, dated September 24, 2013, counsel reiterated his request by writing:

> If it were possible to have Ms. JOYCE testify in person, I would do that, but she has relocated to Colorado from Florida, where she was living when I spoke to her. If necessary, I can try to have her speak to you on the telephone, or even by Skype, if you are willing to do that, so that she can confirm the contents of the affidavit.

R. 60–61. Far from "repeatedly request[ing]" a trial type hearing, the record reflects that plaintiffs' counsel merely stated that Ms. Joyce may have been available to speak with the director "[i]f necessary." Plaintiffs cannot now say the USCIS erred by failing to provide them a hearing they never explicitly demanded. Second, regardless of whether plaintiffs requested a hearing, they had an opportunity, pursuant to the *Stokes* decree, to present Joyce as a witness during the I-130 interview, to compel her attendance through a subpoena if she were unwilling to appear voluntarily, and to cross-examine her if she gave testimony adverse to plaintiffs. *Stokes* Decree 3–

---

[3] "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017) (cleaned up).

4. Why plaintiffs failed to do so is not clear, but their failure is another basis for a finding that this argument has been forfeited.[4]

Finally, plaintiffs argue that the BIA violated their due process rights through its failure to address the arguments that Joyce should have been allowed to testify at a hearing and that the circumstances under which the 2006 statement was coerced should have been considered. The claim that the BIA failed to address the argument regarding Joyce's testimony may be disposed of for the same reasons just discussed—the BIA cannot have erred by failing to address the argument that plaintiffs were entitled to call Joyce as a witness at a trial type hearing if such argument was not presented to the BIA. For good measure, I note that plaintiffs' appeal to the BIA merely reiterated that plaintiffs' counsel had "offer[ed] . . . to arrange for Ms. JOYCE to testify telephonically or virtually," R. 34, but never insisted, nor claimed to have insisted, that plaintiffs were entitled to call Joyce at a hearing separate from the interview she could have attended. The argument about failure to consider the circumstances surrounding the purported coercion of the 2006 statement fares no better. In its decision denying the appeal, the BIA acknowledges the evidence plaintiffs submitted to rebut the 2006 statement, including Joyce's 2012 affidavit. R. 5. Though Mr. Mamedov and Ms. Agayeva disagree with the BIA's assessment of the evidence they submitted, "the BIA's opinion makes clear that it did consider all of this evidence." *Mamedov II*, 2022 WL 426155, at *4.

---

[4] The Supreme Court has explained that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Because plaintiffs failed to avail themselves of the opportunity to call Joyce as a witness in the first place, I need not consider whether additional procedural safeguards (such as a "trial-type" hearing) would have been justified.

In sum, assuming that plaintiffs were entitled to due process protections, I hold that plaintiffs have failed to plead facts sufficient to support a claim that their procedural due process rights were violated. For the same reasons, I conclude that plaintiffs have not stated a plausible claim that defendants violated the *Stokes* decree by refusing to provide the opportunity to present witnesses or rebut adverse information.

## CONCLUSION

For the foregoing reasons, I hold that plaintiffs failed to state a plausible claim that their procedural due process rights were violated when the I-130 petition was denied. Defendants' motion to dismiss the complaint is granted. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:  September 1, 2023
        Brooklyn, New York